Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| In the Matter of the Search of | |
|---|---|
| *(Briefly Describe the property to be searched or identify the person by name and address* | Case No. **21 - 3141 MB** |
| 2004 Jeep Liberty bearing Arizona license plate V4A5VC, last four of VIN 4520, registered to Leonard Madden. | |

## ELECTRONIC ISSUED SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of <u>Arizona</u>.
*(identify the person or describe the property to be searched and give its location):*

### As further described in Attachment A.

The person or property to be searched, described above, is believed to conceal (identify the person or describe the property to be seized):

### As set forth in Attachment B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before  _____**8-17-21**_____.
*(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10 p.m.
☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona.</u>

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*     ☐ for 30 days *(not to exceed 30)*
☐ until, the facts justifying, the later specific date of  _____.

Date and time issued:   <u>August 3, 2021</u> @ 9:15 p.m. -        **M Morrissey**
                                                                 *Judge's signature*

City and State:  <u>Phoenix, Arizona</u>              <u>Honorable Michael T. Morrissey, U.S. Magistrate</u>
                                                        *Printed name and title*
                                                        Judge

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

| Inventory made in the presence of : |
|---|
|  |

| Inventory of the property taken and name of any person(s) seized: |
|---|
|  |

| Certification |
|---|

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:_____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A - Vehicle

## DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS

## TO BE SEARCHED

**PROPERTY:**

A 2004 Jeep Liberty, bearing Arizona license V4A5VC, VIN: 1J4GK48K24W264520, registered to Leonard Loren Madden. at 15385 W Fillmore St, Unit 52, Goodyear, Arizona, 85338, for the property and personal belongings (including computers and computer media).

**ITEMS:**

Search for all items listed within ATTACHMENT B.

1

**ATTACHMENT B**

**ITEMS TO BE SEARCHED AND SEIZED**

1.      Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found including:

        a.      Any computer, computer system  and related peripherals; cellular phones, personal digital assistants, tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, scanners, modems, tape drives, disk applications programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer-related operation equipment, firewalls, switches, hubs, wireless access points, gaming consoles, web cameras, uninterrupted power supplies, hardware device power supplies, tape backup drives, digital video recorders, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including JPG, GIF, TIP AVI, and MPEG), and any electronic data storage devices including, hardware, software, diskettes, backup tapes, CD-ROMS, DVD, flash memory devices, and other storage mediums; any input/output peripheral devices, including computer passwords and data security devices an computer-related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child pornography; distribute, receive, or possess child pornography;

        b.      Books and magazines containing child pornography;

        c.      Originals, copies, and negatives of visual depictions of child pornography; and

        d.      Motion pictures, films, videos, and other recordings of visual depictions of child pornography.

2.      Information, correspondence, records, documents or other materials pertaining to the possession, receipt or distribution of child pornography, that were transmitted or received using computer, some other facility or means of interstate or foreign commerce, common carrier, of the U.S. mail including:

        a.      Envelopes, letters and other correspondence including electronic mail, chat logs,

1   and electronic messages, establishing possession, access to, or transmission through interstate or
2   foreign commerce, including by U.S. mail or by computer, of child pornography;

3          b.      Books, ledgers and records bearing on the productions, reproduction, receipt,
4   shipment, orders, requests, trades, purchases or transactions of any kind involving the
5   transmission through interstate or foreign commerce, including by U.S. mail or by computer of
6   child pornography;

7          c.      Records, documents, or materials, including any and all address books, mailing
8   lists, supplier lists, mailing address labels, and documents and records pertaining to the
9   preparation, purchase and acquisition of names or lists of names to be used in connections with
10  the purchase, sale, trade or transmission of child pornography, through interstate commerce
11  including by U.S. mail or by computer;

12         d.      Records, documents or materials, including address books, names and lists of
13  names and addresses of minors visually depicted in child pornography;

14         e.      Records of Internet usage, including user names and e-mail addresses and
15  identities assumed for the purposes of communication on the Internet to purchase, sell, trade,
16  transmit or acquire child pornography.   These records may include ISP records, i.e., billing and
17  subscriber records, chat room logs, e-mail messages and include electronic files in a computer
18  and on other data storage mediums, including CDs or DVDs.

19  3.    Credit card information which evidences ownership or use of the computer equipment
20  found in the above residence, including payment for Internet access and computers or electronic
21  media or other storage devices, disks, CD-ROMS, or similar containers for electronic evidence.

22  4.    Records evidencing occupancy or ownership of the premises described above, including
23  utility and telephone bills, mail, envelopes or addressed correspondence.

24  5.    Records or other items which evidence ownership or use of computer equipment found in
25  the above residence, including sales receipts, bills for Internet access and handwritten notes.

26  6.    Any computer hard drive or other electronic media (COMPUTER), physically located at
27  the residence or virtually connected to any computer within the residence, found to contain
28  information otherwise called for by this warrant:

2

a.      Evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved usernames and passwords, documents, and browsing history;

b.      Evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software;

c.      Evidence of the lack of such malicious software;

d.      Evidence of the attachment to the COMPUTER of other storage devices, disks, CD-ROMS, or similar containers for electronic evidence;

e.      Evidence of the times the COMPUTER was used;

f.      Passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER.

3

Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly Describe the property to be searched or identify the person by name and address)*<br>2004 Jeep Liberty, bearing Arizona License V4A5VC, VIN ending in 4520, registered to Jon Christen. | Case No. 21-3141 MB |

## ELECTRONIC SUBMITTED APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Special Agent, Emily A. Steele, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the District of Arizona.

### As further described in Attachment A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C § 2251(a) | Production of Child Pornography |
| 18 U.S.C § 2252(a)(2) | Distribution of Child Pornography |
| 18 U.S.C § 2252(a)(4)(B) | Possession of Child Pornography |

The application is based on these facts:
### As set forth in Attachment C, incorporated herein by reference.

- ☒ Continued on the attached sheet.
- ☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA *s/Gayle L. Helart* _____

___X___ Sworn by Telephone

_____
*Applicant's Signature*

Emily A. Steele, Special Agent, FBI
*Applicant's printed name and title*

Date and time issued: August 3, 2021 @ 9:15 p.m.

_____
*Judge's signature*

City and State: Phoenix, Arizona _____

Honorable Michael T. Morrissey, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A - Vehicle**

**DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS**

**TO BE SEARCHED**

**PROPERTY:**

A 2004 Jeep Liberty, bearing Arizona license V4A5VC, VIN: 1J4GK48K24W264520, registered to Leonard Loren Madden. at 15385 W Fillmore St, Unit 52, Goodyear, Arizona, 85338, for the property and personal belongings (including computers and computer media).

**ITEMS:**

Search for all items listed within ATTACHMENT B.

**ATTACHMENT B**

**ITEMS TO BE SEARCHED AND SEIZED**

1.     Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found including:

   a.     Any computer, computer system   and related peripherals; cellular phones, personal digital assistants, tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, scanners, modems, tape drives, disk applications programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer-related operation equipment, firewalls, switches, hubs, wireless access points, gaming consoles, web cameras, uninterrupted power supplies, hardware device power supplies, tape backup drives, digital video recorders, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including JPG, GIF, TIP AVI, and MPEG), and any electronic data storage devices including, hardware, software, diskettes, backup tapes, CD-ROMS, DVD, flash memory devices, and other storage mediums; any input/output peripheral devices, including computer passwords and data security devices an computer-related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child pornography; distribute, receive, or possess child pornography;

   b.     Books and magazines containing child pornography;

   c.     Originals, copies, and negatives of visual depictions of child pornography; and

   d.     Motion pictures, films, videos, and other recordings of visual depictions of child pornography.

2.     Information, correspondence, records, documents or other materials pertaining to the possession, receipt or distribution of child pornography, that were transmitted or received using computer, some other facility or means of interstate or foreign commerce, common carrier, of the U.S. mail including:

   a.     Envelopes, letters and other correspondence including electronic mail, chat logs,

1

and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by U.S. mail or by computer, of child pornography;

b.      Books, ledgers and records bearing on the productions, reproduction, receipt, shipment, orders, requests, trades, purchases or transactions of any kind involving the transmission through interstate or foreign commerce, including by U.S. mail or by computer of child pornography;

c.      Records, documents, or materials, including any and all address books, mailing lists, supplier lists, mailing address labels, and documents and records pertaining to the preparation, purchase and acquisition of names or lists of names to be used in connections with the purchase, sale, trade or transmission of child pornography, through interstate commerce including by U.S. mail or by computer;

d.      Records, documents or materials, including address books, names and lists of names and addresses of minors visually depicted in child pornography;

e.      Records of Internet usage, including user names and e-mail addresses and identities assumed for the purposes of communication on the Internet to purchase, sell, trade, transmit or acquire child pornography.   These records may include ISP records, i.e., billing and subscriber records, chat room logs, e-mail messages and include electronic files in a computer and on other data storage mediums, including CDs or DVDs.

3.   Credit card information which evidences ownership or use of the computer equipment found in the above residence, including payment for Internet access and computers or electronic media or other storage devices, disks, CD-ROMS, or similar containers for electronic evidence.

4.   Records evidencing occupancy or ownership of the premises described above, including utility and telephone bills, mail, envelopes or addressed correspondence.

5.   Records or other items which evidence ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access and handwritten notes.

6.   Any computer hard drive or other electronic media (COMPUTER), physically located at the residence or virtually connected to any computer within the residence, found to contain information otherwise called for by this warrant:

2

a. Evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved usernames and passwords, documents, and browsing history;

b. Evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software;

c. Evidence of the lack of such malicious software;

d. Evidence of the attachment to the COMPUTER of other storage devices, disks, CD-ROMS, or similar containers for electronic evidence;

e. Evidence of the times the COMPUTER was used;

f. Passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER.

3

**ELECTRONICALLY SUBMITTED AFFIDAVIT IN**

**SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Emily A. Steele, Special Agent with Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows, to wit:

**INTRODUCTION**

The facts of this case, as more fully detailed herein, are that in June 2021, a Kik user with a username of "kevinharding2018" and display name of "Kevin Harding" was a member of a Kik private group. An undercover FBI Agent from the Tampa Field Office in Florida was part of this private group and began a private message chat with "Kevin Harding." "Kevin Harding" sent a multiple pictures depicting child pornography involving the same girl, who appears to be about 3 years old, to the undercover FBI agent August 1, 2021. Investigative steps determined that the Kik user "Kevin Harding" was established on September 24, 2018, with an email account "kevinharding2018@gmail.com." Investigative steps also determined that an IP address of "65.141.6.170" was being used. The IP address, 65.141.6.170, comes back to CenturyLink, with a location of Goodyear, Arizona. Subpoena results from CenturyLink IP address, 65.141.6.170, result in an apartment complex called "Estrella Commons" located at 15385 West Fillmore St, Goodyear, Arizona, 85338. Private chats between the undercover agent and "kevinharding2018" showed that "kevinharding2018" said he lived in Arizona and worked at an airport in the baggage department. Additionally, "kevinharding2018" sent photos of himself and also of the girl that he claimed was his daughter. This information was used in record checks and resulted in an address of 15385 W Fillmore St, Unit 52, Goodyear, Arizona 85338 which is rented by LEONARD LOREN MADDEN (hereafter referred to as MADDEN). Record checks also revealed that MADDEN has a vehicle registered in his name; a 2004 Jeep Liberty bearing Arizona license plate V4A5VC. I am requesting that the Court issue a warrant to search 15385 W Fillmore St, Unit 52, Goodyear, Arizona 85338, the person of MADDEN for digital devices, the vehicle 2004 Jeep Liberty bearing Arizona license plate V4A5VC, for digital devices to locate child pornography and conclusively identify the individual transmitting child pornography.

1

**PRELIMINARY BACKGROUND INFORMATION**

1.    I am a Special Agent with the FBI assigned to the Phoenix Division. I have been so employed for two years. I have consulted this case with Special Agent Candace Rose who has been employed for seventeen years as a Special Agent and is specifically assigned to conduct investigations pursuant to the FBI's Innocent Images National Initiative (IINI), which focuses on crimes where computers and the Internet are used in the sexual exploitation of children. I am responsible for conducting federal and international investigations relating to crimes involving the sexual exploitation of children. I have received basic and on-the-job training in the investigation of cases involving the sexual exploitation of children.   The statements contained in this Affidavit are based on my experience and background as a Special Agent and on information provided by other law enforcement agents.

2.    The purpose of this application is to seize evidence, more particularly described in Attachment B, of violations of 18 U.S.C. § 2251(a), which makes it a crime to use a minor with the intent that the minor engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, § 2252(a)(2) which makes it a crime to distribute child pornography, and § 2252(a)(4)(B), which makes it a crime to possess, or knowingly access with intent to view, child pornography.

3.    Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.   I have set forth only those facts that are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §§ 2251(a) (production of child pornography) and 2252 (distribution, receipt, and possession of child pornography) are located at search 15385 West Fillmore Street, Goodyear, Arizona, 85338 ("SUBJECT PREMISES"), more particularly described in Attachment A of the residential search warrant, within a computer and related peripherals and computer media found at the SUBJECT PREMISES; is located on MADDEN, and any property and personal belongings (including computers and computer media), more particularly described in Attachment A of the person warrant; and is located in the vehicle of MADDEN, specifically, a 2004 Jeep Liberty bearing Arizona license plate V4A5VC, and any

2

1  property and personal belongings (including computers and computer media), more particularly
2  described in Attachment A of the vehicle warrant.

### DEFINITIONS

4  4.    The following non-exhaustive list of definitions applies to this Affidavit and Attachments
5  A and B (collectively referred to as "warrant"):

6      a.    "Child Pornography" is any visual depiction of sexually explicit conduct where (a)
7  the production of the visual depiction involved the use of a minor engaged in sexually explicit
8  conduct, (b) the visual depiction is a digital image, computer image, or computer-generated
9  image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct,
10  or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable
11  minor is engaged in sexually explicit conduct. See 18 U.S.C. § 2256(8).

12      b. "Child Erotica" means materials or items that are sexually arousing to persons having a
13  sexual interest in minors, but that are not, in and of themselves, obscene or illegal.   In contrast
14  to "child pornography," this material does not necessarily depict minors in sexually explicit
15  poses or positions.   Some of the more common types of child erotica include photographs that
16  are not sexually explicit, drawings, sketches, fantasy writing, and diaries.   See Kenneth V.
17  Lanning, Child Molesters: A Behavioral Analysis (2001) at 65.   Federal courts have recognized
18  the evidentiary value of child erotica and its admissibility in child pornography cases.   See
19  United States v. Cross, 928 F.2d 1030 (11th Cir. 1991) (testimony about persons deriving sexual
20  satisfaction from and collecting non-sexual photographs of children admissible to show intent
21  and explain actions of defendant); United States v. Riccardi, 258 F.Supp.2d 1212 (D. Kan., 2003)
22  (child erotica admissible under Federal Rule of Evidence 404(b) to show knowledge or intent).

23      c. "Visual depictions" include undeveloped film and videotape, and data stored on
24  computer disk or by electronic means, which is capable of conversion into a visual image.   See
25  18 U.S.C. § 2256(5).

26      d. "Minor" means any person under the age of eighteen years.   See 18 U.S.C. § 2256(1).
27      e. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including
28  genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex;

(b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person. See 18 U.S.C. § 2256(2).

f. "Computer" means "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." See 18 U.S.C. § 1030(e)(1).

g. "Computer hardware" consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices), peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

h. "Computer software" is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic or other digital form. It commonly includes programs to run operating systems, applications and utilities.

i. "Computer-related documentation" consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software or other related items.

j. "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation or data. Data security devices may consist of hardware, software or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips and circuit boards. Data security software of digital code may include programming code that creates

4

1    "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data

2    security software or code may also encrypt, compress, hide or "booby-trap" protected data to

3    make it inaccessible or unusable, as well as reverse the progress to restore it.

4          k. "Internet Service Providers" (ISPs) are commercial organizations, which provide

5    individuals and businesses access to the Internet. ISPs provide a range of functions for their

6    customers including access to the Internet, web hosting, e-mail, remote storage and co-location

7    of computers and other communications equipment. ISPs can offer various means to access the

8    Internet, including telephone based dial-up, broadband based access via a digital subscriber line

9    (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically

10   charge a fee based upon the type of connection and volume of data, called bandwidth that the

11   connection supports. Many ISPs assign each subscriber an account name such as a user name

12   or screen name, an e-mail address, and an e-mail mailbox and the subscriber typically creates a

13   password for the account. By using a computer equipped with a telephone or cable modem, the

14   subscriber can establish communication with an ISP over a telephone line or through a cable

15   system, and can access the Internet by using his or her account name and password.

16         l. "ISP Records" are records maintained by ISPs pertaining to their subscribers (regardless

17   of whether those subscribers are individuals or entities). These records may include account

18   application information, subscriber and billing information, account access information (often

19   times in the form of log files), e-mail communications, information concerning content uploaded

20   and/or stored on or via the ISP's servers and other information, which may be stored both in

21   computer data format and in written or printed record format. ISPs reserve and/or maintain

22   computer disk storage space on their computer system for their subscribers' use. This service

23   by ISPs allows for both temporary and long-term storage of electronic communications and

24   many other types of electronic data and files.

25         m. "Internet Protocol address" (IP address) refers to a unique number used by a computer

26   to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider

27   (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP

28   addresses might also be static, if an ISP assigns a user's computer a particular IP address which

1   is used each time the computer accesses the Internet.

2       n.  The terms "records," "documents" and "materials" include all information recorded in
3   any form, visual or aural, and by any means, whether in hand-made form (including writings,
4   drawings, painting), photographic form (including microfilm, microfiche, prints, slides,
5   negatives, videotapes, motion pictures, photocopies), mechanical form (including phonograph
6   records, printing, typing) or electrical, electronic or magnetic form (including tape recordings,
7   cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard
8   disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media
9   Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators,
10  electronic dialers or electronic notebooks, as well as digital data files and printouts or readouts
11  from any magnetic, electrical or electronic storage device).

12      o.  "Digital device" includes any electronic system or device capable of storing and/or
13  processing data in digital form, including the following: central processing units; laptop or
14  notebook computers; PDAs; wireless communication devices such as telephone paging devices,
15  beepers and mobile telephones; peripheral input/output devices such as keyboards, printers,
16  scanners, plotters, monitors and drives intended for removable media; related communications
17  devices such as modems, cables and connections; storage media such as hard disk drives, floppy
18  disks, compact disks, magnetic tapes and memory chips; and security devices.

19      p.  "Image" or "copy" refers to an accurate reproduction of information contained on an
20  original physical item, independent of the electronic storage device.  "Imaging" or "copying"
21  maintains contents, but attributes may change during the reproduction.

22      q.  "Hash value" refers to a mathematical algorithm generated against data to produce a
23  numeric value that is representative of that data.   A hash value may be run on media to find the
24  precise data from which the value was generated.   Hash values cannot be used to find other data.

25      r.  "Steganography" refers to the art and science of communicating in a way that hides the
26  existence of the communication. It is used to hide a file inside another. For example, a child
27  pornography image can be hidden inside another graphic image file, audio file or other file
28  format.

6

s. "Compressed file" refers to a file that has been reduced in size through a compression algorithm to save disk space. The act of compressing a file will make it unreadable to most programs until the file is uncompressed.

t. "Domain Name" refers to the common, easy to remember names associated with an Internet Protocol address. For example, a domain name of www.usdoj.gov refers to the Internet Protocol address of 149.101.1.32. Domain names are typically strings of alphanumeric characters with each level delimited by a period. Each level, read backwards - from right to left- further identifies parts of an organization. Examples of first level or top-level domains are typically .com for commercial organizations, .gov for the governmental organizations, .org for organizations, and .edu for educational organizations. Second level names will further identify the organization. For example, usdoj.gov further identifies the United States governmental agency to be the Department of Justice. Additional levels may exist as needed until each machine is uniquely identifiable. For example, www.usdoj.gov identifies the world wide web server located at the United States Department of Justice, which is part of the United States government.

u. "Log Files" are records automatically produced by computer programs to document electronic events that occur on computers. Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

v. "Hyperlink" refers to an item on a web page which, when selected, transfers the user directly to another location in a hypertext document or to some other web page.

w. "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

7

x.  "Uniform Resource Locator" or "Universal Resource Locator" or "URL" is the unique address for a file that is accessible on the Internet.  For example, a common way to get to a website is to enter the URL of the website's home page file in the Web browser's address line. Additionally, any file within that website can be specified with a URL.  The URL contains the name of the protocol to be used to access the file resource, a domain name that identifies a specific computer on the Internet, and a pathname, a hierarchical description that specifies the location of a file in that computer.

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY
## AND ONLINE CHILD EXPLOITATION

5.    Based upon my knowledge, training and experience in online child exploitation and child pornography investigations, as well as the experience and training of other law enforcement officers with whom I have had discussions, I have learned the following:

a.  Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, stored and communicated as a commodity and a further tool of online child exploitation.

b.  Individuals can transfer photographs from a camera onto a computer-readable format with a variety of devices, including scanners, memory card readers, or directly from digital cameras.

c.  Modems allow computers to connect to another computer through the use of telephone, cable, or wireless connection.   Electronic contact can be made to literally millions of computers around the world.

d.  The capability of a computer to store images in digital form makes the computer itself an ideal repository for child pornography.   As explained further below, the storage capacity of electronic media used in home computers has increased tremendously within the last several years.   These drives can store extreme amounts of visual images at very high resolution.

e.  The Internet, the World Wide Web and other Internet components afford individuals many different and relatively secure and anonymous venues for obtaining, viewing and trading child pornography or for communicating with others to do so or to entice children.

8

f. Individuals can use online resources to retrieve, store and share child pornography, including services offered by Internet Portals such as Google, America Online (AOL), Yahoo! and Hotmail, among others. Online services allow a user to set up an account providing e-mail and instant messaging services, as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. And even in cases where online storage is used, evidence of child pornography can be found on the user's computer in most cases.

g. As is the case with most digital technology, computer communications can be saved or stored on hardware and computer storage media used for these purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. However, digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained for very long periods of time until overwritten by other data.

h. The interaction between software applications and the computer operating systems often results in material obtained from the Internet being stored multiple times, and even in different locations, on a computer hard drive without the user's knowledge. Even if the computer user is sophisticated and understands this automatic storage of information on his/her computer's hard drive, attempts at deleting the material often fail because the material may be automatically stored multiple times and in multiple locations within the computer media. As a result, digital data that may have evidentiary value to this investigation could exist in the user's computer media despite, and long after, attempts at deleting it. A thorough search of this media could uncover evidence of receipt, distribution and possession of child pornography.

i. Data that exists on a computer is particularly resilient to deletion. Computer files or

9

1   remnants of such files can be recovered months or even years after they have been downloaded
2   onto a hard drive, deleted or viewed via the Internet.   Electronic files downloaded to a hard
3   drive can be stored for years at little to no cost.   Even when such files have been deleted, they
4   can be recovered months or years later using readily-available forensic tools.   When a person
5   "deletes" a file on a home computer, the data contained in the file does not actually disappear,
6   rather, the data remains on the hard drive until it is overwritten by new data.   Therefore, deleted
7   files or remnants of deleted files, may reside in free space or slack space – that is, in space on
8   the hard drive that is not allocated to an active file or that is unused after a file has been allocated
9   to a set block of storage space for long periods of time before they are overwritten.   In addition,
10  a computer's operating system may also keep a record of deleted data in a "swap" or "recovery"
11  file.   Similarly, files that have been viewed via the Internet are automatically downloaded into
12  a temporary Internet directory or cache.   The browser typically maintains a fixed amount of
13  hard drive space devoted to these files, and the files are only overwritten as they are replaced
14  with more recently viewed Internet pages.   Thus, the ability to retrieve residue of an electronic
15  file from a hard drive depends less on when the file was downloaded or viewed and more on a
16  particular user's operating system, storage capacity, and computer habits.

17  ## BACKGROUND ON CELLULAR PHONE AND CHILD PORNOGRAPHY
18  ## AND ONLINE CHILD EXPLOITATION

19  6.      Based upon my knowledge, training and experience in online child exploitation and child
20  pornography investigations, as well as the experience and training of other law enforcement
21  officers with whom I have had discussions, I have learned the following:

22      a. Cellular telephones have revolutionized the way in which child pornography is
23  produced, distributed, stored and communicated as a commodity and a further tool of online
24  child exploitation.

25      b. A cellular telephone is a handheld wireless device used for voice and data
26  communication through radio signals.   These telephones send signals through networks of
27  transmitter/receivers, enabling communication with other wireless telephones or traditional
28  "land line" telephones.   A cellular telephone usually contains a "call log," which records the

10

1   telephone number, date, and time of calls made to and from the phone.   In addition to enabling
2   voice communications, wireless telephones offer a broad range of capabilities.   These
3   capabilities include: storing names and phone numbers in electronic "address books;" sending,
4   receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still
5   photographs and moving video; storing and playing back audio files; storing dates,
6   appointments, and other information on personal calendars; and accessing and downloading
7   information from the Internet.   Cellular telephones may also include global positioning system
8   ("GPS") technology for determining the location of the device.

9        c.   The capability of a cellular telephone to store images in digital form makes the cellular
10   telephone itself an ideal repository for child pornography.   As explained further below, the
11   storage capacity of electronic media used in home cellular telephones has increased
12   tremendously within the last several years.   These drives can store extreme amounts of visual
13   images at very high resolution.

14        d.   The Internet, the World Wide Web and other Internet components afford individuals
15   many different and relatively secure and anonymous venues for obtaining, viewing and trading
16   child pornography or for communicating with others to do so or to entice children.

17        e.   Individuals can use online resources to retrieve, store and share child pornography,
18   including services offered by Internet Portals such as Google, America Online (AOL), Yahoo!
19   and Hotmail, among others.   Online services allow a user to set up an account providing e-mail
20   and instant messaging services, as well as electronic storage of cellular telephone files in any
21   variety of formats.   A user can set up an online storage account from any cellular telephone with
22   access to the Internet.   Evidence of such online storage of child pornography is often found on
23   the user's cellular telephone.   And even in cases where online storage is used, evidence of child
24   pornography can be found on the user's cellular telephone in most cases.

25        f.   The interaction between software applications and the cellular telephone operating
26   systems often results in material obtained from the Internet being stored multiple times, and even
27   in different locations, on a cellular telephone hard drive without the user's knowledge.   Even if
28   the cellular telephone user is sophisticated and understands this automatic storage of information

11

1  on his/her cellular telephone's storage, attempts at deleting the material often fail because the
2  material may be automatically stored multiple times and in multiple locations within the cellular
3  telephone media.   As a result, digital data that may have evidentiary value to this investigation
4  could exist in the user's cellular telephone media despite, and long after, attempts at deleting it.
5  A thorough search of this media could uncover evidence of receipt, distribution and possession
6  of child pornography.

7  **BACKGROUND ON KIK MESSENGER**

8  7.    Kik Messenger ("Kik") is an instant messaging application for mobile devices. The
9  application is available on most iOS, Android, and Windows phone operating systems free of
10  charge.   Kik uses a smartphone's data plan or Wi-Fi to transmit and receive messages.   Kik
11  allows users to share photographs, sketches, mobile web-pages, linked internet files and other
12  content.

13  8.    Kik subscribers obtain an account by registering with Kik.   During the registration process,
14  Kik asks subscribers to provide basic personal information and to select a username.   During
15  this process, Kik registers date, time, internet protocol (IP) address and device related
16  information.   The username is the only unique identifier used by Kik.   According to the Kik
17  Law Enforcement Guide, a Kik username is unique, can never be replicated and can never be
18  changed.

19  **BACKGROUND ON COMPUTERS AND EVIDENCE ASSESSMENT PROCESS IN**
20  **CHILD PORNOGRAPHY AND CHILD EXPLOITATION**
21  **INVESTIGATIONS**

22  9.    Based upon my knowledge, training, and experience, as well as information related to me
23  by agents and others involved in the forensic examination of digital devices, I know that
24  segregating information before commencement of the review of digital evidence by the
25  examining agent is inconsistent with the evidence assessment process in child pornography and
26  online child exploitation investigations.   This is true in part because the items to be searched
27  will not only contain child pornography but also will contain the identity of the user/possessor
28  of the child pornography as well as evidence as to the programs and software used to obtain the

12

1    child pornography, which may be located throughout the areas to be searched.

2        a.    As further described in Attachment A, this warrant seeks permission to locate not

3    only computer files that might serve as direct evidence of the crimes described in the warrant,

4    but also for evidence that establishes how computers were used, the purpose of their use, and

5    who used them.   Additionally, the warrant seeks information about the possible location of other

6    evidence.

7        b.    As described above and in Attachment A, this application seeks permission to search

8    and seize certain records that might be found in the SUBJECT PREMISES, in whatever form

9    they are found.   One form in which the records might be found is stored on a computer's hard

10   drive, or other electronic media.   Some of these electronic records might take the form of files,

11   documents, and other data that is user-generated.   Some of these electronic records, as explained

12   below, might take a form that becomes meaningful only upon forensic analysis.

13       c.    Although some of the records called for by this affidavit might be found in the form

14   of user-generated documents (such as word processor, picture and movie files), computer hard

15   drives can contain other forms of electronic evidence that are not user-generated.   In particular,

16   a computer hard drive may contain records of how a computer has been used, the purposes for

17   which it was used and who has used these records, as described further in the attachments.   For

18   instance, based upon my knowledge, training and experience, as well as information related to

19   me by agents and others involved in the forensic examination of digital devices, I know the

20   following:

21           i.  Data on the hard drive not currently associated with any file can provide

22               evidence of a file that was once on the hard drive but has since been deleted

23               or edited, or of a deleted portion of a file (such as a paragraph that has been

24               deleted from a word processing file).

25           ii. Virtual memory paging systems can leave traces of information on the

26               hard drive that show what tasks and processes the computer were recently in

27               use.

28           iii.    Web browsers, e-mail programs and chat programs store configuration

13

information on the hard drive that can reveal information such as online nicknames and passwords.

iv.    Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices and the times the computer was in use.

v.   Computer file systems can record information about the dates files were created and the sequence in which they were created.   This information may be evidence of a crime or indicate the existence and location of evidence in  other locations on the hard drive.

d.  Further, in finding evidence of how a computer has been used, the purposes for which it was used and who has used it, sometimes it is necessary to establish that a particular thing is not present on a hard drive or that a particular person (in the case of a multi-user computer) was not a user of the computer during the time(s) of the criminal activity.   For instance, based upon my knowledge, training and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know that when a computer has more than one user, files can contain information indicating the dates and times that files were created as well as the sequence in which they were created, and, for example, by reviewing the Index.dat files (a system file that keeps track of historical activity conducted in the Internet Explorer application), whether a user accessed other information close in time to the file creation dates, times and sequences so as to establish user identity and exclude others from computer usage during times related to the criminal activity.

e.  Evidence of how a digital device has been used, what it has been used for and who has used it, may be the absence of particular data on a digital device and requires analysis of the digital device as a whole to demonstrate the absence of particular data.   Evidence of the absence of particular data on a digital device is not segregable from the digital device.

f.  The types of evidence described above may be direct evidence of a crime, indirect evidence of a crime indicating the location of evidence or a space where evidence was once located, contextual evidence identifying a computer user and contextual evidence excluding a

1  computer user.   All of these types of evidence may indicate ownership, knowledge and intent.

2      g.   This type of evidence is not "data" that can be segregated, that is, this type of data cannot

3  be abstractly reviewed and filtered by a seizing or imaging agent and then transmitted to

4  investigators.   Rather, evidence of this type is a conclusion, based on a review of all available

5  facts and the application of knowledge about how a computer behaves and how computers are

6  used.   Therefore, contextual information is necessary to understand the evidence described in

7  Attachment A also falls within the scope of the warrant.

8                  **SEARCH METHODOLOGY TO BE EMPLOYED**

9  10.   As noted within this search warrant, it would be extremely difficult, if not impossible to

10  conduct a thorough on-site review of all of the potential evidence in this case.   Given these

11  constraints, the search methodology to be employed is as follows:

12      a.   All computers, computer hardware and any form of electronic storage that could contain

13  evidence described in this warrant will be seized for an off-site search for evidence that is

14  described in the attachments of this warrant. It is anticipated that mirror copies or images of such

15  evidence will be made if the failure to do so could otherwise potentially alter the original

16  evidence.

17      b.   Consistent with the information provided within this affidavit, contextual information

18  necessary to understand the evidence, to identify the user/possessor of the child pornography,

19  and to establish admissibility of the evidence in subsequent legal proceedings will also be sought

20  by investigative agents.

21      c.   Additional techniques to be employed in analyzing the seized items will include (1)

22  surveying various file directories and the individual files they contain; (2) opening files to

23  determine their contents; (3) scanning storage areas, (4) performing key word searches through

24  all electronic storage areas to determine whether occurrences of language contained in such

25  storage areas exist that are likely to appear in the evidence described in this affidavit and its

26  attachments, and (5) performing any other data analysis techniques that may be necessary to

27  locate and retrieve the evidence described in this affidavit and its attachments.

28  11.   Because it is expected that the computers, computer hardware and any form of electronic

1   storage media may constitute (1) instrumentality of the offense, (2) fruit of criminal activity, (3)
2   contraband, or (4) evidence otherwise unlawfully possessed, it is anticipated that such evidence
3   will not be returned to the owner and that it will be either forfeited or ultimately destroyed in
4   accordance with the law at the conclusion of the case.

5       a.  Because of the large storage capacity as well as the possibility of hidden data within the
6   computers, computer hardware and any form of electronic storage media, it is anticipated that
7   there will be no way to ensure that contraband-free evidence could be returned to the
8   user/possessor of the computer, computer hardware or any form of electronic storage media,
9   without first wiping such evidence clean. Wiping the original evidence clean would mean that
10  the original evidence would be destroyed and thus, would be detrimental to the investigation and
11  prosecution of this case.

12      b.  Further, because investigators cannot anticipate all potential defenses to the offenses in
13  this affidavit, and as such, cannot anticipate the significance of the evidence that has been
14  lawfully seized pursuant to this warrant, it is requested that all seized evidence be retained by
15  law enforcement until the conclusion of legal proceedings or until other order of the court.

16      c.  If after careful inspection investigators determine that such computers, computer
17  hardware and electronic storage media do not contain (1) instrumentality of the offense, (2) fruit
18  of criminal activity, (3) contraband, (4) evidence otherwise unlawfully possessed, or (5) evidence
19  of the person who committed the offense and under what circumstances the offense was
20  committed, then such items seized will be returned.

21  **CHARACTERISTICS OF INDIVIDUALS INVOLVED IN THE DISTRIBUTION OF**
22  **CHILD PORNOGRAPHY**

23  12.  Based upon my knowledge, experience, and training in child pornography investigations,
24  and the training and experience of other law enforcement officers with whom I have had
25  discussions, I know there are certain characteristics common to individuals involved in the
26  possession and distribution of child pornography.  Those who possess and distribute child
27  pornography:

28      a.  May receive sexual gratification, stimulation, and satisfaction from contact with

16

children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b.   May collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media.   Such individuals oftentimes use these materials for their own sexual arousal and gratification.   Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.   May possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location.   These individuals typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d.   May maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area.   These collections are often maintained for several years and are kept close by, usually at the individual's residence, to enable the collector to view the collection, which is valued highly.

e.   May correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f.   May prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

17

## **DETAILS OF THE INVESTIGATION**

13.   In June, July, and August of 2021, an undercover agent out of the FBI Tampa, Florida Field Office, had access to a Kik messenger chat group that are known to law enforcement (Group A) that appeared to have an interest in children and/or child pornography. Participants in this chat group would share images and videos that contained child pornography within Group A.

14.   An individual utilizing the Kik username "kevinharding2018" with a display name of "Kevin Harding" was a member of Group A.

15. On approximately June 15, 2021, the undercover agent asked Kik user "kevinharding2018" where he was from, in which "kevinharding2018" responded "Arizona."

16. On June 29, 2021 the following chat conversation was had between the undercover agent and "kevinharding2018" within a private message:

    Agent: You do like young?

    Kevinharding2018: Yes

    Agent: Ok I thought so

    Kevinharding2018: Ya I just never had full sex with a young one

    Agent: Just partial sex? Lol You said you rubbed her in the shower or something?

    Kevinharding2018: Ya I rub her lil pussy and lick it and have her suck my cock and I try to lube her ass and slide it in but to tight

    Agent: Oh dam that's hot man. How long u been doing that

    Kevinharding2018: 2 years

    Agent: How old was she 2 years ago

    Kevinharding2018: 1 but I didn't try to stick it in here then that just recent but I rub her and licked her

17. On July 17, 2021 "kevinharding2018" sent the following private message to the undercover agent:

    "Hey man sorry I been working my ass off just got a new job at the airport being a bagged handler"

18. On August 1, 2021 the following chat conversation was had between the undercover agent

18

1  and "kevinharding2018" within a private message:

2      Agent: You been getting any time with your daughter?

3      Kevinharding2018: Yes I have I took a couple of pic last night

4      Agent: Mmmmm nice man what have you been doing with her

5      Kevinharding2018:   Haveing her suck my cock, take shower with her and rub that pussy

6      with my cock.

7  19. On August 1, 2021 "kevinharding2018" sent a photo directly to the undercover agent in a

8  private chat that depicted the same nude girl, who appeared to me to be about 3 years old,

9  pictures of himself with the girl, and child pornography images of the girl.   The photo files I

10  reviewed can be described as the following:

11      a. IMG_0398.JPG: This color photo depicts the girl, with her face blacked out, sitting

12  against a white wall, naked, sitting on a black floor mat, with her genitals exposed. The girl is

13  holding a clear cup that has a red logo and white lettering on it, and a yellow rubber ducky can

14  be seen near her feet.

15      b. IMG_0396.JPG: This color photo depicts an adult man sitting next to the girl.   The man

16  is wearing an orange t-shirt and a black hat. The hat has a silver shiny logo across the front of it.

17      c. IMG_0395.JPG: This color photo depicts the girl, with her face blacked out and who is

18  nude, stepping out of a shower. The shower has white walls, a glass door, a black floor mat, and

19  rubber ducks can be seen on the floor.

20      d. IMG_0394.JPG: This color photo is a close up image taken of the girl's nude genitals.

21  She is sitting on a black floor with white walls in the background.

22      e. IMG_0404.JPG: This color photo shows the girl sitting on the floor of a shower with an

23  adult's penis in front of her face. The girl is sitting in a shower on a black floor mat with white

24  walls. The girl is holding a clear cup that has a red logo with the letters "QT" written in white,

25  and a yellow rubber duck at her feet.   The man is standing over her with his penis exposed to

26  her face.   The girl's face is partially blacked out with her eyes showing and she is looking up at

27  the camera.

28  20. On August 1, 2021 the following chat conversation was had between the undercover agent

19

and "kevinharding2018" within a private message after the undercover agent received IMG_0404.JPG.   The context of this was the undercover having asked for verification to ensure "kevinharding2018" was not acting out of fantasy, but rather that he actually had access to a child that he was photographing, and that he had not obtained pictures of a child from another source.

Kevinharding2018: Ill take a vid. Of me eatting her and rubbing on her

Agent: Man all you need to do is send me a pic of that shower and you will have all the props bro. And you can stay in the room as long as you want

Kevinharding2018: Sound good I'll be home in like 45min

Agent: Like a live camera pic with you holding up 3 fingers bro. So many people fake the live pics too. Got to be careful

21. On August 1, 2021 "kevinharding2018" sent three photos directly to the undercover agent in a private chat that depicted himself, and not the girl, nor him with the girl, that verified he was a real person with "live" photos which meant that he took the photos within the Kik application. The live photos included scenes in the bathroom where the photos were taken of the girl that he said was his in the earlier discussions between the two. The photo files I reviewed can be described as the following:

a. IMG_0392.JPG: This color photo depicts the man holding up three fingers. The man appears to be outside and is wearing a red shirt, neon yellow vest, and a black hat. The black hat has a silver shiny logo across the front of it. The word "camera" is below the picture, indicating that the photo was taken live from the Kik application.

b. IMG_0403.JPG: This color photo depicts the man holding up three fingers. The man is wearing a red shirt and appears to be in a bathroom in front of a shower. The shower has white walls, a glass door, and a black floor mat propped up against the wall. The word "camera" is below the picture, indicating that the photo was taken live from the Kik application.

c. IMG_0402.JPG: This color photo depicts the man wearing a red t-shirt and appears to be in a bathroom in front of a shower. The shower has white walls, a glass door that is open, and a black floor mat propped against the wall. There appears to be a yellow rubber duck on the floor.

1  The word "camera" is below the picture, indicating that the photo was taken live from the Kik
2  application.

3  22.   An administrative subpoena was served on Kik regarding "kevinharding2018" account.

4  23.   Kik responded that the account was created on September 24, 2018 with an email address
5  of "kevinharding2018@gmail.com." Kik also provided a login IP address of "65.141.6.170"
6  from July 17, 2021 through August 8, 2021.

7  24. The IP address resolved to CenturyLink with a location of Goodyear, Arizona.

8  25. A subsequent administrative subpoena was served on CenturyLink regarding IP address
9  "65.141.6.170"

10 26. CenturyLink responded that the IP address "65.141.6.170" comes back to 15385 West
11 Fillmore St, Goodyear, Arizona, 85338. The service is provided by "Vicidiem" which is
12 contracted out and paid for by the apartment complex "Estrella Commons," and likely available
13 to all residents of the apartment complex.

14 27. FBI Phoenix provided IMG_0392.JPG to the FBI liaison, Special Agent Robert Byrne, at the
15 Sky Harbor Airport because "kevinharding2018" said he worked at baggage at an airport and
16 lived in Arizona.   SA Byrne showed the image to the baggage area supervisor at Sky Harbor,
17 Jeffrey Costillo. Costillo recognized the individual in the photo to be an employee working at
18 the Sky Harbor Airport. Castillo knew this employee to be LEONARD MADDEN.

19 28. Open source investigative techniques resulted in locating LEONARD LOREN MADDEN,
20 DOB XX-XX-1996 (full birthdate known to me), Social Security Number ***-**-2589 (full
21 social security number known to me), to a residential address of 15385 West Fillmore St, Unit
22 52, Goodyear, Arizona, 85338, which is the Estrella Apartments.

23 29. A check of the Arizona Motor Vehicle Division revealed a driver's license for LEONARD
24 LOREN MADDEN, license number D08843847, with an address of 15385 West Fillmore St,
25 Unit 52, Goodyear, Arizona, 85338. The MVD check also revealed the following vehicle; a 2004
26 Jeep Liberty, bearing Arizona license plate V4A5VC, registered to LEONARD LOREN
27 MADDEN, at address 15385 West Fillmore St, Unit 52, Goodyear, Arizona, 85338. The MVD
28 photo for MADDEN appeared to me to be the same individual as the selfies sent to the

21

1  undercover agent.

2  30. Social Media checks for "LEONARD MADDEN" resulted in a Facebook account

3  "facebook.com/profile.php?id=100014187403868". Upon review of the account, I saw that the

4  LEONARD MADDEN Facebook account contained pictures of an adult man and a girl who

5  looked to be about 3 years old.   Upon my review, the images of both the man and the girl appear

6  to be the same people pictured in the pictures described earlier that were sent to the undercover

7  agent, including the pictures that were child pornography.

8  **FORFEITURE**

9  31. For Chapter 110 child pornography offenses, 18 U.S.C. §§ 2253 and 2254 provide the

10  forfeiture authority. Section 2254 provides for civil forfeiture of the same property subject to

11  criminal forfeiture in Section 2253, as requested in a criminal seizure warrant pursuant to 21

12  U.S.C. § 853(f).

13  32. Section 2253 provides, in relevant part:

14          (a) Property subject to criminal forfeiture -

15          (1) any visual depiction described in section 2251, 2251A, or 2252, 2252A, 2252B,

16          or 2260 of this chapter, or any book, magazine, periodical, film, videotape, or other

17          matter which contains any such visual depiction, which was produced, transported,

18          mailed, shipped or received in violation of this chapter;

19          (2) any property, real or personal, constituting or traceable to gross profits or other

20          proceeds obtained from such offense, and;

21          (3) any property, real or personal, used or intended to be   used to commit or to

22          promote the commission of such offense or any property traceable to such property.

23  33. Pursuant to these Rules, I request immediate forfeiture of any property, including items of

24  electronic evidence, which constitutes, contains, or was used to facilitate a crime involving child

25  pornography or online child exploitation.

26  34. I am seeking authorization to go into the residence at any time because the conversation

27  between the undercover agent and LEONARD MADDEN included that he sexually abuses her,

28  that it occurs within a space in their apartment, that he is her parent and therefore has full access

to her, and sexual abuse is possible to happen against the girl at any time.   Additionally, surveillance saw the child at the residence at approximately 1.45 p.m. on August 3, 2021.   The last time MADDEN was seen at the residence was at approximately 7.30 p.m. on August 3, 2021

**CONCLUSION**

35. Based on the foregoing, there is probable cause to believe that LEONARD LOREN MADDEN or another person located at the SUBJECT PREMISES, is utilizing or has utilized the Kik username "kevinharding2018" in violation of Title 18 U.S.C. § 2252, which, among other things, makes it a federal crime for any person to produce, possess, receive, or distribute child pornography, and that the property, evidence, fruits and instrumentalities of these offenses, more fully described in Attachment B of this Affidavit, are located at the SUBJECT PREMISES, as more fully described in Attachment A.

Respectfully submitted,


Emily A. Steele, Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me telephonically on this __3rd__ day of August 2021.


HONORABLE MICAHEL T. MORRISSEY
United States Magistrate Judge

23